This is an action to recover damages for personal injuries sustained by plaintiff when he was struck by a barrel (or drum) of cleaning chemicals that fell off of a hand truck in the lobby of a building owned by defendant 450 Park, where plaintiff worked. Third-party Chemtreat, the vendor of the chemicals who allegedly failed to pack the barrels properly for delivery, was entitled to summary judgment. The claims for common-law indemnification against Chemtreat should have been dismissed, as the record shows that Chemtreat was not actively at fault in bringing about plaintiffs injury (see McCarthy v Turner Constr, Inc., 17 NY3d 369, 375 [2011]). Indeed, it is undisputed that the barrels were unpacked by the independent trucking contractors who delivered them, and that the barrel that hit plaintiff fell after *459 the trucking contractors rocked the hand truck during delivery. Chemtreat also owed no duty of care to plaintiff, who was a third party to the vending contract between Chemtreat and Falk (see Espinal v Melville Snow Contrs., 98 NY2d 136, 140-141 [2002]).
The claims for contractual indemnification against Chemtreat also should have been dismissed. The indemnity provision in Chemtreat’s contract with Falk was limited on its face to losses arising from the use of Chemtreat’s patented devices, processes, materials and equipment. Because the chemicals were not in use at the time of the accident, a properly strict reading of the indemnity clause bars a finding that Chemtreat owes Falk contractual indemnity (Baginski v Queen Grand Realty, LLC, 68 AD3d 905 [2009]). Nor did Chemtreat owe Ward Trucking, which subcontracted the delivery of the barrels to Atlantic/ Triangle, contractual indemnity; the contract between Chemtreat and Ward Trucking contains an indemnification clause only in favor of Chemtreat. There is no basis in the record for finding that Chemtreat is subject to the indemnification provisions in the building manager Taconic’s construction contract with Dolner, the general contractor.
The complaint also should have been dismissed as against Falk, which was performing work on the building’s HVAC system. While its contract with Dolner, the construction manager, imposed responsibility upon Falk for “delivery, unloading . . . and all other risk of loss relating to materials” it used in the work, Falk did not actually supervise the unloading and delivery of the barrels. Thus, it did not “launch! ] a force or instrument of harm” (Moch Co. v Rensselaer Water Co., 247 NY 160, 168 [1928]). As to the remaining bases for extending a contractual obligation to a party lacking privity (Espinal, 98 NY2d at 140), there is no evidence that plaintiff had come to rely on Falk’s supervision of deliveries so as to reasonably expect that Falk would supervise the delivery that occasioned his injury (id., citing Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 226 [1990]). Finally, Falk did not entirely displace the obligation of others to maintain safety at the premises during deliveries (Espinal, 98 NY2d at 140), and thus its “contractual undertaking is not the type of ‘comprehensive and exclusive’ property maintenance obligation contemplated by Palka” (id. at 141, citing Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 584 [1994]). Concur — Tom, J.P., Andrias, DeGrasse, Richter and Román, JJ.