E.E. Cruz & Co., Inc. v Axis Surplus Ins. Co. (2018 NY Slip Op 07265)





E.E. Cruz & Co., Inc. v Axis Surplus Ins. Co.


2018 NY Slip Op 07265


Decided on October 30, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 30, 2018

Sweeny, J.P., Mazzarelli, Kahn, Oing, Singh, JJ.


152988/12 7484A 7484

[*1] E.E. Cruz & Company, Inc., Plaintiff-Respondent,
v
Axis Surplus Insurance Company, Defendant, Arch Insurance Company, Defendant-Respondent, National Casualty Company, Defendant-Appellant-Respondent, Everest National Insurance Company, Defendant-Respondent-Appellant.
Arch Insurance Company, as real party in interest to E.E. Cruz & Company, Inc., Third-Party Plaintiff-Respondent,
v
Axis Surplus Insurance Company, Third-Party Defendant, National Casualty Company, Third-Party Defendant-Appellant-Respondent.


Kennedys CMK, New York (Max W. Gershweir of counsel), for appellant-respondent.
Barclay Damon LLP, Rochester (Sanjeev Devabhakthuni of counsel), for respondent-appellant.
Lewis, DiBiasi, Zaita & Higgins, LLP, New York (Nicholas J. Zaita of counsel), for E.E Cruz & Company, Inc., respondent.
Smith Mazure Director Wilkins Young & Yagerman, P.C., New York (Louise M. Cherkis of counsel), for Arch Insurance Company, respondent.



Orders, Supreme Court, New York County (Arlene P. Bluth, J.), entered December 21, 2017 and December 26, 2017, respectively, which, to the extent appealed from, denied defendants National Casualty Company and Everest National Insurance Company's motions for summary judgment dismissing the complaint as against them or declaring that plaintiff is not entitled to coverage under the insurance policies they issued with respect to any claims or damages alleged in the complaint, unanimously modified, on the law, to grant the motions to the extent of declaring that plaintiff's markups for overhead and profit on remediation work are not damages covered by the policies and that National's share of excess coverage is 1/11, and otherwise affirmed, without costs.
Plaintiff, the contractor on a deck replacement project on the Throgs Neck Bridge, seeks [*2]to recover under various insurance policies for remediation costs it incurred and damages awarded against it in favor of the Triborough Bridge and Tunnel Authority (TBTA) as a result of a fire that broke out on the bridge during the performance of its work.
The record shows that plaintiff complied with the notice provision of the policy issued by National, which required it to "see to it that [National was] notified as soon as practicable of an occurrence' or an offense . . . which may result in a claim" (emphasis added). Plaintiff was not required to notify National directly (see Spoleta Constr., LLC v Aspen Ins. UK Ltd., 27 NY3d 933, 935-936 [2016]; United States Underwriters Ins. Co. v Falcon Constr. Corp., 2003 WL 22019429, *5, 2003 US Dist LEXIS 14817, *15-16 [SD NY 2003]).
National contends that the costs of remediation undertaken by plaintiff were voluntary payments as a matter of law and not damages it was "legally obligated to pay." This contention fails to take into account the emergency nature of the remediation required; the bridge had been completely shut down as a result of the fire and was only partially opened as the damage was assessed and remediation work begun. Given that the costs incurred were covered under the policy, that time was of the essence in performing the remediation, and that plaintiff's damages would grow without remediation, we cannot conclude as a matter of law that the remediation costs were voluntary payments.
Nor can we conclude that, as National and Everest contend, their policies do not cover amounts awarded to TBTA in arbitration because plaintiff "entered into" the arbitration without their consent or that of the underlying insurers. The submission of a dispute notice to TBTA's Contractual Disputes Review Board merely preserved plaintiff's right to challenge TBTA's determination of damages in a mandatory arbitration. In any event, both policies are ambiguous, as it is unclear which of the items in the list that precedes the phrase "entered into without our consent," i.e., settlements, judgments, arbitration, and other dispute methods, the phrase is intended to modify.
National argues that, because the policy provides additional insured coverage for property damages "caused, in whole or in part," by the named insured's acts or omissions, plaintiff is not entitled to additional insured coverage for the portion of fire damage attributed to it. However, the purpose of the quoted language is "to provide coverage for an additional insured's vicarious or contributory negligence" (Burlington Ins. Co. v NYC Tr. Auth., 29 NY3d 313, 326 [2017]).
We reject National's and Everest's arguments that costs incurred for site safety monitoring in connection with the remediation are, as a matter of law, not damages resulting from the accident.
National and Everest argue correctly that plaintiff's markups for its own overhead and profit on the remediation work are not covered under the policies, because these markups are not costs that it was "legally obligated to pay," within the meaning of the policies.
National is correct that its share of excess coverage is 1/11 of the total. While the National and Everest policies each provide excess coverage of $10 million, the National policy further provides that where additional insured coverage is required pursuant to contract, "the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by [the underlying insurance]." National's named insured's subcontract required "not less than" $2 million in commercial general liability coverage naming plaintiff as an additional insured, and the underlying policy limit was $1 million. Thus, National's limit here is $1 million (see Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co., 53 AD3d 140, 156 n 14 [1st Dept 2008]). Because insurers sharing the same risk are required to [*3]"contribute in the proportion their policies bear to the limit of coverage at that level" (Jefferson Ins. Co. of N.Y. v Travelers Indem. Co., 92 NY2d 363, 372 [1998]), National's share of the total excess coverage of $11 million is 1/11 (see Bovis, 53 AD3d at 155-156).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 30, 2018
CLERK